## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Lyon Financial Services, Inc., a
Minnesota corporation, d/b/a
USBancorp Manifest Funding Services          Civil Case No. 08-5386-MJD/AJB
with its principal offices in Marshall,
Minnesota,

                Plaintiff,

vs.                                          **REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO REMAND
AND MEMORANDUM OF LAW IN**
Christian Tse Corporation; Christian         **OPPOSITION TO MOTION FOR**
Tse, personally; Victoria Tse,               **SUMMARY JUDGMENT, DISMISSAL**
personally; and JBP International, Inc.      **OR TRANSFER**
d/b/a Proquest Solutions, jointly and
severally,

                Defendants

## INTRODUCTION

This matter is before the Court on Plaintiff's Motion to Remand.  Along with their

response to the Motion to Remand, Defendants Christian Tse Corporation; Christian Tse,

personally; Victoria and Tse, personally (hereinafter "**Defendants Tse**") have moved for

summary judgment or, in the alternative, to dismiss or transfer this matter based upon

alleged defects in this Court's jurisdiction.  This Court must consider the Motion to

Remand prior to moving on to any other issues, as it goes directly to this Court's

jurisdiction over the case.  Because this case does not meet the jurisdictional amount in

controversy, and because Defendants Tse have not obtained the consent of all Defendants

to removal, remand is proper.  If the Court considers the remaining motions, they should

be denied.  There are issues of material fact regarding the alleged agency of Defendant

JBP International, Inc. d/b/a Proquest Solutions, and Defendants Tse are not entitled to judgment as a matter of law on Plaintiff's claims against them. This Court has jurisdiction over the parties due to the forum selection clause in the agreement of the parties, and transfer of this matter is not appropriate.

## 1.    Motion to Remand

Plaintiff originally brought this matter in Lyon County, Minnesota state court. The amount sought in the Complaint is $62,640.90, plus costs, disbursements and attorney's fees. Defendants Tse removed this action to federal court, and have alleged that Plaintiff's attorneys fees must exceed $12,359.10, and therefore the amount in controversy exceeds $75,000 as required by 28 U.S.C. §1332(a)(1). Plaintiffs' attorneys bill $125 per hour, and most likely would not spend over 98.8 hours on a file of this nature, which would be required to incur fees sufficient to exceed the jurisdictional amount. See Affidavit of Seanor in Support of Motion to Remand, previously submitted to the Court. In addition, Plaintiff's attorneys have limited their fees to $12,350.00 in this matter. Id. Therefore, the maximum amount in controversy, including attorney's fees, is $74,840.90, which is below the jurisdictional threshold for this matter.

Defendants Tse have acknowledged that "[d]etermining the specific amount of fees is obviously not possible in advance." Memorandum of Law in Opposition to Remand, etc., page 6. Defendants Tse also acknowledges that a "court can consider post-removal evidence in determining whether the requisite amount is in controversy". Id, citing Mattel, Inc. v. Bryant, 441 F.Supp.2d 1081, 1092. The burden is on Defendants

Tse, the parties opposing remand, to establish the amount of attorney's fees. Peterson v. BASF Corp., 12 F.Supp.2d 964, 968 (D. Minn. 1998) "[T]he party opposing remand must prove the requisite amount in controversy by a preponderance of the evidence." Id (internal citations omitted). "[S]omething more than anecdotal conjecture is necessary to remove the Court's doubt as to its subject matter jurisdiction." Id at 974.

Plaintiff has offered the Court specific evidence on its attorneys' hourly rate for files of this nature, along with a calculation of the number of hours that its attorneys would need to bill in order to exceed the jurisdictional threshold, along with a stipulation that the attorneys fees will not exceed $12,350.  See Affidavit of Seanor in Support of Motion to Remand, previously filed with the Court.  On the other hand, Defendants Tse have made a passing reference to the costs incurred by Defendants Tse' attorney in another case before this Court.  There is no information offered to the Court as to the hourly rate or number of hours incurred by Defendants' attorneys in that case. There is only a blanket statement that it involved the same attorneys, and that the Defendants in that case (NOT Lyon Financial) incurred $9,260.15 in attorneys fees.  This type of "anecdotal conjecture" cannot be allowed. Peterson v. BASF, 12 F.Supp.2d at 974. Even if this information were to be considered, it goes to show that attorney's fees will not exceed the jurisdictional threshold.  If the same amount of attorneys fees were incurred by Plaintiff in this case (a point that is NOT conceded), the amount in controversy would fall approximately $3,000 short of the jurisdictional threshold.

As noted in Plaintiff's Memorandum of Law in Support of Motion to Remand, "[t]he failure to obtain the consent of all defendants to removal to federal court renders the removal defective." Pritchett v. Cottrell, Inc., 512 F.3d 1057, 1062 (8th Cir. 2008); see also 28 U.S.C. 1446(b). District courts are "required to resolve all doubts about federal jurisdiction in favor of remand." Wilkinson v. Shackelford, 478 F3d 957, 963 (8th Cir. 2007). Defendants Tse did not make an effort to obtain the consent of Defendant JBP International, Inc. d/b/a Proquest Solutions (hereinafter **"Defendant Proquest"**) until AFTER the Notice of Removal, and in fact not until AFTER the Motion for Remand had been served and filed. Consent to removal by fellow defendants is jurisdictional-without it, the removal is improper. Pritchett, 512 F.3d at 1062. Defendants Tse had no justifiable reason to believe that attempting to obtain the permission of their fellow Defendants would be futile until after the deadline for removal had run. Therefore, the removal is defective and remand is proper.

2.      **Defendants Tse are not entitled to summary judgment.**

    a.      **The Motion for Summary Judgment should be stayed to allow for further discovery.**

Defendants Tse next seek summary judgment on this matter. There does not appear to be a dispute that the Court must first consider the Motion to Remand before moving on to this issue.

It is not appropriate for this Court to take up a Motion for Summary Judgment at this time because additional discovery is needed in order for Plaintiff to adequately respond to this Motion. For example, Defendants Tse have provided certain documents

with the Declaration of Christian Tse, particularly a promissory note signed on behalf of Proquest and a personal guaranty signed by Proquest's principal, Jaime Perez. See Declaration of Christian Tse, Exhibit 3. That Plaintiff asked Proquest and Perez to provide these signed documents, but they were not returned to Plaintiff but were rather put in the possession of Defendants Tse, raises a specific question as to whether there is collusion and/or fraudulent conduct by Defendants Tse and Defendants Proquest. See Affidavit of Mellisa Wing; see also Affidavit of Ronald E. Seanor In Support of Reply Memorandum of Law In Support of Motion to Remand and Memorandum of Law in Opposition to Motion for Summary Judgment, Dismissal or Transfer (hereinafter **"Second Affidavit of Seanor"**). It also casts doubt upon Defendants Tse's assertion that they could not locate Proquest to obtain its permission to remove this matter to federal court. Id. The Summons and Complaint were served on Defendants Tse in September 2008. Since that time, Defendants Tse have attempted to remove this case to federal court, and Rule 26 disclosures have been exchanged. However, it is only since the Motion for Summary Judgment was filed that this additional information came to light, and it became apparent that further discovery is needed. Id. Defendants Tse have also indicated that additional discovery is needed to establish the elements of their claim of agency. See Memorandum of Law in Opposition to Remand, etc., page 9. Therefore, Plaintiff respectfully requests that proceedings on the motion for summary judgment be stayed until all jurisdictional questions are resolved and there has been adequate time for additional discovery.

If the Court does not grant a stay, summary judgment is not proper because there are material facts in dispute and Defendants Tse are not entitled to judgment as a matter of law.

**b.   Proquest is not Plaintiff's agent.**

Defendants Tse suggest that because Plaintiff made its lease documents available to Proquest, this makes Proquest Plaintiff's agent. As an initial observation, the existence of an agency relationship is a question of fact, and the burden is on the party alleging the relationship to establish its existence. <u>Plate v. St. Mary Help Of Christians Church</u>, 520 N.W.2d 17, 20 (Minn. Ct. App. 1994)(quotations omitted) *review denied* Oct. 14, 1994. The allegations of agency are clearly contradicted by the facts presented by Defendants Tse themselves, as well as the specific terms of the lease agreement.

Defendants Tse acknowledge that they knew that they were dealing with two different entities-a vendor, Proquest and a leasing company, Fernwood Financial. See Affidavit of Christian Tse, previously submitted to the Court by Defendants Tse, Paragraph 4. The Personal Guaranty signed by Victoria Tse also specifically states that it is being offered to induce US Bancorp Manifest Funding Services to lease the equipment to Christian Tse Corporation. See Exhibit "B" to Verified Complaint, previously submitted to the Court as Exhibit 1 to the Affidavit of Seanor in Support of Motion to Remand (hereinafter **"First Affidavit of Seanor"**). Likewise, the Delivery Guarantee executed by Christian Tse Corporation indicates that the lease is between US Bancorp Manifest Funding Services as Lessor and Christian Tse Corporation as Lessee. See

Exhibit "C" to Verified Complaint, previously submitted to the Court as Exhibit 1 to the First Affidavit of Seanor.

The lease agreement specifically provides that "THE SUPPLIER IS NOT AN AGENT OF OURS AND NOTHING THE SUPPLIER STATES CAN AFFECT YOUR OBLIGATION UNDER THE LEASE." Exhibit "A" to Verified Complaint, page 2, paragraph 5 (emphasis in the original). The Delivery Guaranty also indicates that "In reliance on your promise to pay we will purchase the Equipment from the supplier, and you may contact the supplier for your warranty rights (if any, which we transfer to you) which are not the Lessor's responsibility." See Exhibit "C" to Verified Complaint. These provisions clearly put Defendants Tse on notice that Proquest is not an agent of Plaintiff.

Defendants Tse suggest that because the lease agreements were put in the possession of the vendor, that creates an agency relationship. This issue was addressed in Wells Fargo Financial Leasing, Inc. v. LMT-Fette, Inc., 250 F.Supp.2d 1120, 1127 (S.D. Iowa 2003). The Court found that mere possession of the leasing company's documents did not establish an agency relationship. As in Wells Fargo, there is no proof that Plaintiff exerted any control over Proquest. Id. The same case Defendants Tse rely upon in support of their claim of agency, Lyon Financial Services, Inc. v. Riccoboni, CIV 02-4215, establishes that there is no exclusive agency relationship between Plaintiff and Proquest. See Wells Fargo, 250 F.Supp.2d at 1127. There is no actual agency relationship between Plaintiff and Proquest. See Affidavit of Wing. As in Wells Fargo, the lease in the present case contains a clear indication that the supplier of the equipment

is not an agent of the lessor, and that nothing the supplier states can affect Proquest's liability on the lease. 250 F.Supp.2d at 1128; see also Exhibit "A" to Verified Complaint (Exhibit 1 to First Affidavit of Seanor), page 2, paragraph 5. There is no agency relationship between Plaintiff and Proquest. Therefore, any alleged statements or conduct by Proquest do not act to release Defendants Tse from their obligations to Plaintiff.

**c.    There has been no rescission of the lease agreement.**

Defendants Tse claim that the lease agreement has been rescinded. This is contrary to the statements made by Christian Tse to Debbie Stibbe, a Litigation Specialist for Plaintiff. In October, 2007, prior to the commencement of this action, Ms. Stibbe contacted Mr. Tse to discuss the case. He told her that he had not paid Proquest $45,000.00, nor had he directed any other person or entity to pay Proquest $45,000.00, in connection with the lease that is the subject matter of this lawsuit. See Affidavit of Debbie Stibbe. In fact, he informed Ms. Stibbe that if the equipment had been delivered by Proquest, he would have made payments to Plaintiff under the lease agreement. Id. These statements indicate that Mr. Tse was aware that the lease had not been rescinded by Plaintiff.

Defendants Tse claim that the lease agreement was rescinded by Defendant Proquest, and that Proquest was acting as Plaintiff's agent. As noted above, agency is a fact question that Defendants Tse have the burden of establishing. See Plate, 520 N.W.2d at 20. Therefore, granting summary judgment on a bare allegation of agency by Defendants Tse is inappropriate. "The lease documents make it quite clear that the

supplier is not an agent of the lessor, and that nothing the supplier states can affect

Defendants Tse's obligations under the lease. See Exhibit "A" to Verified Complaint

(Exhibit 1 to First Affidavit of Seanor), page 2, Paragraph 5. Further, the lease provides

that "[t]his Agreement may be modified only by written agreement and not by course of

performance." Id, paragraph 1. Finally, the lease provides that **THIS IS A**

**NONCANCELLABLE/IRREVOCABLE LEASE, THIS LEASE CANNOT BE**

**CANCELLED OR TERMINATED."** Id, page 1, center of page (emphasis in the

original). Each page of the lease was either signed or initialed by Defendants Tse. See,

generally, Exhibit "A". Defendants Christian Tse and Victoria Tse executed personal

guarantys of the lease agreement. See Exhibit "A" to Verified Complaint (Exhibit 1 to

First Affidavit of Seanor), page 4; see also Exhibit "B" to Verified Complaint (Exhibit 1

to First Affidavit of Seanor).

Defendants Tse executed a Delivery Guaranty acknowledging that the equipment

had been purchased by Plaintiff from the supplier, and that Defendants Tse's obligations

under the lease were irrevocable and unconditional and commenced immediately upon

execution of the Delivery Guaranty. See Exhibit "C" to Verified Complaint (Exhibit 1 to

First Affidavit of Seanor). (Certain vendors require payment for equipment prior to the

vendors delivering the equipment to the lessees. In such situations, lessees are required to

execute a Delivery Guarantee acknowledging that they are assuming all risk of non-

delivery or dissatisfaction with the equipment and such assumption of risk by the lessee is

a pre-condition of Lyon Financial (as the funding source and lessor) paying the vendor for

the equipment as desired and selected by the lessee.  In this case, lessee also executed the Acceptance of Delivery (on the first page of the Lease) stating that they had already received the equipment – which was not correct, as the Delivery Guarantee reflected the actual transaction.)

The Agreement that is the subject of this dispute is a finance lease.  A finance lease may be created by statute, or the same effect may be accomplished by the terms of the agreement of the parties. Minn. Stat. § 336.2A-103, comment (g).  Due to the unique nature of the transaction, the lessee's obligation to pay the lessor is irrevocable upon acceptance regardless of any claims it may have against the supplier.  Minn. Stat. § 336.2A-407.  Defendants acknowledged having reviewed the terms of the agreement and agreed to be bound by it.  See Exhibit "A", page 1; Exhibit "B", both to Verified Complaint (Exhibit 1 to First Affidavit of Seanor).

The Agreement includes statements that Defendants' obligations are unconditional, disclaims any warranties, transfers any warranty rights Plaintiff may have in the equipment to Defendants, and indicates that any claims regarding the performance of the equipment must be made against the manufacturer, not the vendor or its assignee. See Exhibit "A" to Verified Complaint (Exhibit 1 to First Affidavit of Seanor), page 2, paragraph 5.  These factors establish the existence of a finance lease transaction.  See Minn. Stat. § 336.2A-103, Comment g.

Finance leases are recognized as essential to the equipment leasing industry. Hinkel Excavating & Construction, Inc. v. Construction Equipment International, LTD.,

2001 WL 34008497 *7 (N.D. Iowa 2001) (unpublished decision, a copy of which is submitted as Exhibit "6" to the Second Affidavit of Seanor). "To deny their effect as a matter of law would seriously chill business in this industry because it is by means of these clauses that a prospective financier-assignee of rental payments is guaranteed security for his outright loan to the lessor. Without giving effect to such clauses, the only security for this assignee would be to repossess equipment with substantially diminished value." Id, citing Colorado Interstate Corp. v. CIT Group/Equipment Fin., 993 F.2d 743, 748 (10th Cir. 1993); In re O.P.M. Leasing Serv. Inc., 21 B.R. 993, 1006-1007 (Bankr. S.D.N.Y. 1982). Failure to enforce the "hell or high water" provision of a finance lease would constitute an impermissible attempt to reconstruct the contract contrary to the intent of the parties. Hinkel, 2001 WL 34008497 at *6. Therefore, public policy requires the enforcement of the lease. Defendants' promise to perform under the lease became irrevocable upon its execution of the Delivery Guarantee (or in the alternative, acceptance of the equipment) pursuant to the terms of the lease and Minn. Stat. §336.2A-407.

The parties entered into a finance lease agreement, and therefore there is no responsibility on the part of the lessor for the conduct of the supplier. Exhibit "A" to Verified Complaint (Exhibit "1" to First Affidavit of Seanor, page 2, paragraph 5; Minn. Stat. § 336.2A-407; St. Paul Leasing Co. v. Winkel's, Inc., 244 N.W.2d 661, 663 (Minn. 1976); Agristor Leasing v. Kjergaard, 1985 WL 403 *5 (D. Minn. 1985) (unpublished decision, a copy of which is submitted as Exhibit "7" to the Second Affidavit of Seanor);

Hinkel, 2001 WL 34008497 *6; Colonial Pacific Leasing Corp. v. Datronic Rental Corp.,
486 S.E.2d 804, 809 (Ga. 1997).

Pursuant to the terms of the Agreement and Minn. Stat. 336.2A-407, payments to
the assignee/lessor **must be paid <u>regardless</u> of <u>any</u> <u>claim</u>** or **<u>complaint</u>** with respect to
equipment – even to the extent of fraud on the part of the vendor.  Leases with "hell or
high water" provisions such as the ones in this Lease are routinely held enforceable no
matter what the defense.  Plaintiff, as assignee of this lease, is entitled to judgment
against Defendants Tse as a matter of law.

In St. Paul Leasing Co. vs. Winkel's, Inc., 244 N.W.2d 661, 662-663 (Minn.
1976), the Minnesota Supreme Court affirmed summary judgment in favor of a lessor
with essentially the same warranty disclaimer language in its contract as at issue here, and
indicated lessee's claim must be addressed solely with the vendor.  The "hell or high
water" provisions entitle the lessor to payment regardless – just as a bank on a secured
loan. This is appropriate since the finance lessor has nothing to do with the equipment or
the selection of the equipment by the Lessee and such protection is essential to the
finance leasing industry.  St. Paul Leasing was cited by the U.S. District Court for
Minnesota in AgriStor Leasing vs. Hansen, 1985 WL 6073 (D. Minn. 1985) (unpublished
decision, a copy of which is submitted as Exhibit "8" to the Second Affidavit of Seanor).
The court granted the lessor summary judgment on lessee's claim of breach of warranty
and agency as the lessor had nothing to do with the selection of the equipment and no
evidence existed of agency other than Lessor's lease documents were provided to lessee

by the vendor. Id at *8. See also, In re OPM Leasing Services, Inc., 21 BR 993, 1007 (Bankr. SDNY 1981)(Despite fraudulent Vendor – Lessee still obligated to pay). See also, Leasetec Corporation vs. Orient Systems, 85 F. Supp. 2d 1310 (S.D. Fla. 1999). (Despite vendor fraud and claim of lack of consideration, lessee payment obligation remains.) Such clauses are essential to the equipment leasing industry. To deny their effect would seriously chill business in the leasing industry because it is by means of such clauses that a prospective financier-assignee of rental agreements is guaranteed meaningful security for providing funding to the lessee. The Minnesota Legislature has acknowledged such by passing Article 2A, which includes statutory approval of "hell and high water" terms.

In Colorado Interstate Corp vs. CIT Group, 775 F. Supp. 369 (D. Colo. 1991) aff'd 993 F2d 743 (10th Cir. 1993), the court ruled that a "hell or high water" clause meant that the lessee agreed to pay the lessor despite any claim against the supplier and the lessee's sole remedy was against the supplier. The lessor's right to payment was "absolute and unconditional", despite the fact the supplier had gone bankrupt. In Siemens Credit v. Newlands, 905 F.Supp. 757 (N.D. Cal. 1994), the court rejected claims that alleged fraud on part of the supplier relieved the lessee of its obligation to pay lessor. The lessee entered into a lease contract with an affiliate of the vendor. The lessee made payments for 10 months and then stopped, claiming the equipment was defective. In rejecting the lessee's arguments the court reasoned the lease was a "finance" lease that contained warranty disclaimer language (both conspicuous and reasonable) that obligated the lessee

to address all equipment problems to the vendor. The court ruled that the lessor was not bound by an alleged fraudulent misrepresentation of the supplier because it was made solely by manufacturer's sales representative; no evidence was presented that any such representation was made by the lessor and the lease explicitly provided that the manufacturer was not the agent of the lessor (even though an affiliate). The lease at issue in this action contains a disclaimer of any agency relationship with the supplier. Exhibit "A" to Verified Complaint (Exhibit "1" to First Affidavit of Seanor), page 2, paragraph 5. Plaintiff and the vendor are separate and distinct companies, not affiliates. See Affidavit of Wing.

There is no dispute that Plaintiff paid Proquest for the equipment. There is also no dispute that Defendants Tse signed the lease agreement and supporting documents. See Declaration of Christian Tse, paragraph 5. At that time, the obligations of Defendants Tse became irrevocable and unconditional. Defendants claim that there was a rescission of the lease agreement. However, pursuant to the express terms of the lease, that could only be accomplished by written agreement. The only document that might suggest a possibility of rescission of the lease is the correspondence provided as Exhibit 1 to the Declaration of Tse, which states "US Bank has agreed to cancel your lease **provided** I refund them the money. I will need to get a wire for 45k from you or a bank of your choice. Let me know if you are interested." (emphasis added). This statement contains the crucial caveat that the lease would be cancelled if, and only if, Plaintiff received the money it had funded under the lease. Defendant Christian Tse has told Plaintiff that he

did not provide the money needed for the refund to Plaintiff. See Affidavit of Stibbe. At the very least, this creates a fact question as to the payment of $45,000.00 to any person or entity related to the lease.

Plaintiff did not in any way agree to release Defendants Tse from their obligations until it had been paid the amount it funded under the lease. See Affidavit of Wing. While Plaintiff received a check from Proquest for $45,000.00, it did not clear. Id. Plaintiff has attempted to obtain payment from Proquest, with no success. Id. Therefore, Plaintiff has refused to cancel the lease agreement. Id. Whether Plaintiff contemplated a release is not the relevant question-the relevant question is whether Plaintiff actually released Defendants Tse from the lease agreement. There is no written document to that effect, and the condition precedent to any cancellation was not met. The lease remained in effect at all times, and Defendants Tse have breached their obligations under it. Therefore, they are not entitled to judgment as a matter of law.

**3.     The case should not be dismissed for lack of personal jurisdiction.**

The forum selection clause found in the lease agreement expressly provides for jurisdiction in Minnesota. See Exhibit "A" to Verified Complaint (Exhibit 1 to First Affidavit of Seanor), page 3, paragraph 15. As more fully discussed in the argument related to summary judgment, the lease was not rescinded, and therefore its forum selection clause governs this case.

A forum selection clause is a "significant factor that figures centrally in the district court's calculus" when deciding whether to grant a motion to transfer. Imation Corp. v.

Quantum Corp., 2002 WL 385550 * 3 (D. Minn. 2002) (unpublished decision, a copy of which is submitted herewith as Exhibit "9" to the Second Affidavit of Seanor) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). Forum selection clauses are "enforceable unless it is invalid or enforcement would be unreasonable and unjust." Dominium Austin Partners v. Emerson, 248 F3d 720, 726 (8th Cir. 2001). Similar clauses have been upheld by courts sitting in Minnesota. Best Buy Co. Inc. v. Onkyo USA Corp., 1991 WL 156571 at *3 (D. Minn. 1991) (unpublished decision, a copy of which is submitted herewith as Exhibit "10" to the Second Affidavit of Seanor); Interfund Corp. v. O'Byrne, 462 NW2d 82, 90 (Minn. Ct. App. 1990); Lyon Financial Services, Inc. vs. Film Funding, Inc., 2001 WL 506928 (Min. Ct. App. 2001) (unpublished decision, a copy of which is submitted herewith as Exhibit "11" to the Second Affidavit of Seanor); Lyon Financial Services, Inc. vs. Phoenix Skin Dermatology Place PC, et al, 2002 WL 655573 (Minn. Ct. App. 2002) (unpublished decision, a copy of which is submitted herewith as Exhibit "12" to the Second Affidavit of Seanor). However, the forum selection clause must be reasonable. Lyon Financial Services, Inc. v. Nowobilska Med. Ctr., Ltd., 2005 WL 3526682 *4 (D. Minn. 2005) (unpublished decision, a copy of which is submitted herewith as Exhibit "13" to the Second Affidavit of Seanor)

The elements considered by Courts in determining whether the forum selection clause are "1) the law governing the contract; (2) where the contract was executed; (3) where the transactions are to be performed; (4) the availability of remedies in the designated forum; (5) the public policy of the initial forum state; (6) the location of the

parties, the convenience of prospective witnesses, and the accessibility of evidence; (7) the relative bargaining power of the parties and the circumstances surrounding their dealings; (8) the presence or absence of fraud, undue influence, or other extenuating circumstances; and (9) the conduct of the parties." Id. For the reasons stated below, the forum selection clause is reasonable and should be enforced.

1) The law governing the contract: The contract is irrevocable and unconditional, and cannot be cancelled other than in writing. See Exhibit "A" to Verified Complaint (Exhibit "1" to First Affidavit of Seanor), page 1; page 2, paragraph 1; and page 2, paragraph 5; see also Exhibit "C" to Verified Complaint (Exhibit "1" to First Affidavit of Seanor), "Delivery Guarantee". As noted above, it has not been cancelled in writing. Therefore, all disputes related to the contract, including whether or not it was rescinded, are to be determined "in accordance with the laws of the State of Minnesota." See Exhibit A" to Verified Complaint (Exhibit "1" to First Affidavit of Seanor), page 3, paragraph 15. The Court in Nowobilska, the authority also cited by Defendants Tse on the issue of enforcement of the forum selection clause, determined that since Minnesota law governed the dispute pursuant to the contractual agreement of the parties, as it does in this case, this factor weighs in favor of Plaintiff. 2005 WL 3526682 *4.

2) where the contract was executed: Defendants have acknowledged that the "Agreement shall be deemed fully executed and performed in the State of Minnesota..." Exhibit "A", page 3, paragraph 15. Since the parties to the agreement have deemed it to have been executed and performed in Minnesota this factor favors Plaintiff. At the very

least, it does not favor Defendants Tse. Plaintiff is located in Minnesota, and Defendants

Tse are located in California. When all parties reside in different jurisdictions, this factor

will favor no party. <u>Nowobilska</u>, 2005 WL 3526682 *5.

(3) where the transactions are to be performed: As noted above, the parties agreed

that the lease would be performed in Minnesota. See Exhibit "A", page 3, paragraph 15.

Plaintiff is a Minnesota corporation, and would have received any payments that had been

paid by Defendants Tse in Minnesota. See Affidavit of Wing. This factor favors

Plaintiff. Similar to the place of execution analysis, at the very least, this factor does not

favor either party-significant performance of the agreement were to be accomplished in

each party's residence-the lease was to be approved and funded by Plaintiff out of its

Minnesota location, and the payments were to be made by Defendants Tse from their

residence in California.

(4) the availability of remedies in the designated forum: there is no dispute that

this factor is neutral.

(5) the public policy of the initial forum state. The Court in <u>Nowobilska</u>

determined that under similar circumstances, a forum selection clause was reasonable and

should be enforced in Minnesota. 2005 WL 3526682 *6. This factor favors Plaintiff.

(6) the location of the parties, the convenience of prospective witnesses, and the

accessibility of evidence: Defendants Tse have expressly waived the defense of Forum

Non Conveniens. See Exhibit "A" to Verified Complaint (Exhibit "1" to First Affidavit

of Seanor)page 3, paragraph 15. Even absent this waiver, under either of the venue

options, one party will have to travel to attend trial. Dismissal on this basis would simply shift the inconvenience to the parties, which is not a valid reason for choosing a different venue. Imation, 2002 WL 385550 at * 6. Therefore, any alleged inconvenience to Defendants Tse themselves is irrelevant. The remaining witnesses appear to be employees of Defendant Proquest and of Plaintiff. Whether Defendant Proquest or its employees can be located is not a determinative factor-Defendants Tse have waived any defenses related to the performance of Proquest in the delivery or nondelivery of the equipment. See Exhibit "A" to Verified Complaint (Exhibit "1" to First Affidavit of Seanor), page 2, paragraph 5. The lease agreement is noncancellable and irrevocable, and can only be modified in writing by the parties. Id, page 1; see also page 2, paragraph 1. Since there is no such writing, the lease remains in effect, and no oral statement by an employee of Proquest will change that fact. Id, page 2, paragraph 1. This factor certainly does not favor Defendants Tse, and in fact favors Plaintiff.

(7) the relative bargaining power of the parties and the circumstances surrounding their dealings: This factor favors neither party. Defendants Tse are business persons, and therefore presumed to have a certain level of sophistication. Nowobilska, 2005 WL 3526682 *6 and *7.

8) the presence or absence of fraud, undue influence, or other extenuating circumstances: Defendants Tse suggest that there may have been fraud by the vendor. That conduct is not chargeable to Plaintiff. See Exhibit "A" to Verified Complaint (Exhibit "1" to First Affidavit of Seanor), page 2, paragraph 5. It is also not the sort of

extenuating circumstance that would render the forum selection clause unreasonable-the alleged fraud (failure to deliver the equipment) occurred after the execution of the agreement by Defendants Tse. This factor does not weigh in favor of either party.

(9) the conduct of the parties: Defendants Tse suggest that they have done everything that was required of them. In fact they have not. They were obligated to make payments under the lease agreement until they received written notice of cancellation by Plaintiff. No cancellation was ever provided, and for good reason - the condition precedent to any release of Defendants Tse from their obligations (receipt by Plaintiff of $45,000.00) never occurred. See Affidavit of Wing. The claim that Defendants Tse are paying a different entity for the equipment that was paid for by Plaintiff does not render the forum selection clause unreasonable. This factor weighs in favor of Plaintiff-it only seeks to enforce the terms of the lease agreement in Minnesota courts and applying Minnesota law, all as provided in the lease agreement.

Applying the caselaw cited favorably by Defendants Tse, the forum selection clause is reasonable, valid and enforceable. Therefore, Plaintiff respectfully requests that the Court deny Defendants Tse's motion to dismiss for lack of personal jurisdiction.

4.     **The case should not be transferred.**

The Court should give due regard to Plaintiff's choice of forum, and not disturb it unless the convenience of the parties, convenience of the witnesses, and interest of justice tip strongly in favor of the defendant. Amerilink Corp. v. Cerco, Inc., 1996 WL 238525 * 2 (E.D. Mo. 1996)(unpublished decision, a copy of which is submitted herewith as

Exhibit "14" to the Second Affidavit of Seanor) "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus a party seeking transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Imation, 2002 WL 385550 * 6. Defendants Tse cannot establish that the factors listed in 28 U.S.C. 1404 (a) weigh heavily in favor of transfer. Since Minnesota is an appropriate venue based on the valid and enforceable forum selection clause, Defendants Tse's motion should be denied.

### A.    Convenience of Parties

The convenience of the parties is an issue to be considered. However, "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." Id. The same difficulties would apply to either party wherever this matter is venued. They would be forced to transport and lodge witnesses in the other state and important employees would be unavailable for their normal work duties when out of state. Transfer of venue will simply shift the burden of inconvenience to Plaintiff. This concern does not strongly favor transfer.

### B.    Convenience of Witnesses

Defendants Tse have not suggested that there are any non-party witnesses that would be inconvenienced if venue stays in Minnesota. Simply put, there do not appear to be any non-party witnesses. Even if there were, if their testimony is required, they may voluntarily travel to Minnesota or their depositions may be taken in their home state. The

availability of deposition testimony defeats a claim of inconvenience to Defendant. Interfund, 462 NW2d at 88. This factor does not strongly favor transfer.

## C.    Interests of justice

Courts faced with a motion to transfer venue look to the interests of justice, including familiarity of the respective courts with the law to be applied, relative ability of the parties to bear the expense of litigating in a distant forum, judicial economy, the Plaintiff's choice of forum, obstacles to a fair trial and each party's ability to enforce a judgment. Imation, 2002 WL 38550 at *7 (emphasis added).

Plaintiff does not suggest that federal judges sitting in California are incapable of applying Minnesota law. However, judges sitting in Minnesota are more familiar with the statutes and case law of this state and can apply the law of this state more effectively than judges sitting elsewhere. ComputerUser.Com, Inc. v. Technology Publications, LLC, 2002 WL 1634119 *8 (D.Minn. 2002)(unpublished decision, a copy of which is submitted herewith as Exhibit "15" to the Second Affidavit of Seanor).

The parties' respective ability to bear the expense of litigation in a distant forum does not require transfer. This lawsuit will not require extensive testimony, nor should it require an inordinate amount of time to try. Given the fact that either party will be forced to travel and provide lodging for parties and witnesses, this factor does not weigh heavily in favor of transfer of venue.

Proquest, the vendor, is already a party to this action. Therefore, there is no risk of separate forums deciding issues related to this case. The issue of judicial economy does not support the motion for transfer.

There has been no claim of a risk of obstacles to a fair trial or difficulty of enforcement of judgments made by either party. If any party will have difficulty enforcing a Minnesota judgment, it will be Plaintiff. That is a risk that Plaintiff voluntarily undertook when this complaint was filed in the state of Minnesota. These factors do not weigh in favor of transfer.

Moreover, Plaintiff's exercise of the valid and enforceable forum selection clause by starting this litigation in Minnesota is a significant factor weighing against transfer of venue to California. Imation, 2002 WL 385550 at *3. When all the other relevant factors do not weigh in favor of a transfer of venue, Plaintiff's exercise of the valid and enforceable forum selection clause should be honored and venue should remain in Minnesota. Id. Such is especially true in commercial disputes between corporate entities – such as exists here. The enforcement of this choice of law and forum selection clause is appropriate so that all parties are benefited or burdened as they agreed in their contract. Klimstra v. State Farm Auto Ins. Co., 891 F. Supp. 1329, 1335 (D. Minn. 1995). The interests of justice do not weigh in favor of transfer.

## CONCLUSION

This matter should be resolved by granting Plaintiff's Motion to Remand. Since removal to federal court was improper, this Court has no jurisdiction to consider the

remaining issues raised by Defendants Tse.  Even if the Court were to consider the remaining Motions, they should all be denied.  There are material facts in dispute, and Defendants Tse are not entitled to judgment as a matter of law.  Minnesota has personal jurisdiction over Defendants Tse pursuant to the forum selection clause, and transfer of venue to California would improper.  Therefore, Plaintiff respectfully requests that the Court grant its Motion to Remand and deny all pending motions of Defendants Tse

Dated this 8th day of December, 2008.

<div style="margin-left:40%">

s/ Ronald E. Seanor
Ronald E. Seanor   (#17962)
Kevin K. Stroup  (#170094)
Attorneys for Plaintiff Lyon Financial
Services, Inc. d/b/a USBancorp Manifest
Funding Services
Stoneberg Giles & Stroup, P.A.
300 O'Connell Street
Marshall, MN 56258
Telephone:   (507) 537-0591
Fax:           (507) 532-3498

</div>